J. JONES, Justice,
specially concurring.
I concur in the Court’s opinion. Because we hold that qualified immunity supported the dismissal on summary judgment of James’ claim under 42 U.S.C. § 1983, it was not necessary to consider the merits of that claim. Had there been no qualified immunity issue, I would have voted to vacate the district court’s dismissal of James’ excessive force claim. In my view, there were triable issues of fact that would have precluded summary judgment.
In its 48 page memorandum decision, the district court did a commendable job of analyzing and deciding the issues presented, with the exception of the excessive force claim. Instead of drawing inferences in favor of James, the court essentially discounted portions of her expert’s opinion testimony and expressed disagreement with other portions.
James presented the affidavit of her expert, Dan Montgomery, in opposition to the Defendants’ motion for summary judgment. Montgomery set out substantial professional qualifications in his affidavit, including a bachelor’s degree in law enforcement, a master’s degree in criminal justice administration, 52 years of experience in various law enforcement positions including 25 years as chief of police in Westminister, Colorado, work as a canine instructor and supervisor, a law enforcement expert in 24 legal actions between 1985 and 2013, and various training and teaching sessions. Montgomery reviewed numerous documents in the preparation of his affidavit. In his affidavit, he raised questions about the existence of probable cause and the need for the use of the magnitude of force employed by the officers. Among other things, he observed and opined:
(1) “[I]t is unusual for females to commit forced entry burglaries and it is also rare that a person with the criminal intent to burglarize would continue the crime if they have been spotted and/or identified.”
(2) “Nighttime burglaries into office buildings which are closed for business do not typically involve lit rooms. Burglars typically prefer to operate in the dark using darkness and stealth to their advantage.”
(3) “A reasonable officer would ask themselves why this person would still be in the exact area where she was seen entering, knowing she had been seen, and then take time to drink beer and use dental instruments (in a dental lab) if, in fact, she was intent on committing a burglary.”
(4) “In my opinion, there is not any reasonable evidence to suggest that the suspect was an ‘immediate’ threat to the officers. The suspect was reported to be ‘lethargic’ and ‘totally out [of] it’, which does not imply that she was or would be an ‘immediate’ threat.”
(5) “It is my opinion that the suspect was not ‘actively’ resisting arrest nor was she attempting to evade arrest by flight.”
(6) “The International Association of Chiefs of Police, and the United States Department of Justice have, for many years, adopted the recommendation that a ‘bark and hold’ policy should be followed by those police departments who use canines to search for and apprehend suspects.”
While one might not necessarily agree with these and other opinions expressed by Montgomery, they do not appear on their face to be unreasonable or lacking in credibility. However, the district court stated that Montgomery’s “characterization of the events is conelusory and unduly favorable to James *736 and ignores important and undisputed facts.” Then, in response to Montgomery’s observation that it is unusual for females to commit forced entry burglaries, the court stated, “Montgomery has offered no statistics supporting his contention that females generally do not commit burglaries and there is no justifiable reason to believe that women are not as capable as men in doing so.” While the district court might be correct in saying that women are as capable of men to commit burglaries, that does not mean they engage in that line of work as often as men. And, it is true that Montgomery did not present statistics supporting his observation, but when have we required an expert with more than 50 years’ experience in the field of his expertise to produce statistics backing up an observation? Quite frankly, even though I do not consider myself an expert on the types of crime committed by women, his observation does not seem unreasonable. In light of his obvious experience, it is probably supportable.
With regard to Montgomery’s observation that it is rare for a burglar to continue the crime if they have been spotted and/or identified, the district court stated, “not all burglars immediately abandon their crime and take flight from the scene when spotted entering, particularly those whose thinking is significantly impaired by alcohol and/or drugs.” Both the court and Montgomery may have valid points, but why quibble with the expert’s opinion, which is based upon 52 years of training and experience, when considering a summary judgment? It is not the judge’s role to argue with the expert if the expert’s opinion is not inherently improbable.
With regard to Montgomery’s observation that burglars typically preferred to operate in the dark and that burglars don’t typically drink beer and use dental instruments while on the job, the court stated: “that [James] was in a lit room drinking a beer while handling dental instruments does not reasonable suggest she is ‘working.’ People do not generally drink while at work in a dental lab ...” Montgomery’s observations appear quite reasonable and should not have provoked disagreement on summary judgment.
With regard to Montgomery’s opinion that James, being lethargic and totally out of it, did not present an immediate threat to the officers, the court stated, “The Defendant officers were entitled to assume James posed an immediate threat because the objective factors indicated she was armed with a bladed tool, intoxicated, and hidden within the basement of a largely dark building with which the officers were unfamiliar.” The word “armed” was not the word used by Officer Steven Butler, who was the first officer on the scene. He testified that he was observing James through a window, that he was 6 to 8 feet from her at the time, that she was “holding a knife, and it appeared that she was drinking from a beer can.” He specifically identified the can as “Steel Reserve 211” malt liquor, so he was obviously close enough to see the print on the can. And, he indicated that James was rummaging through things on a table that included several dental instruments. Butler’s testimony would not tend to support the conclusion that James was hiding or “hidden.” There is nothing in the record that would justify the rejection of Montgomery’s opinion as to the potential threat James may have presented.
With respect to Montgomery’s observation that the International Association of Chiefs of Police and the Justice Department have adopted the recommendation that a “bark and hold” policy should be employed for canine apprehension of suspects, the district court stated that, “He merely asserted as a conclusion, without offering proof, that the International Association of Chiefs of Police and the U.S. Department of Justice, have recommended ‘bark and hold’ model policies.” This implies that Montgomery was obligated to offer the policies in evidence, which is something that an expert need not do. Montgomery states in the qualifications portion of his affidavit that he is a “life member” of the International Association of Chiefs of Police. He would certainly have the necessary credentials to speak to policies adopted by that organization.
While in private practice in the mid-1990’s, I encountered a similar situation. My plaintiff’s expert in an excessive force case under *737 Section 1983 “was the chief of police for Bellevue, Washington for ten years, and had a total of twenty-nine years of continuous police service.” Kessler v. Barowsky, 129 Idaho 647, 652, 931 P.2d 641, 646 (1997). He had been a recognized police expert in numerous cases and had reviewed all of the pertinent documents in the Kessler case. Id. at 652-53, 931 P.2d at 646-47. The expert testified, among other things, that the defendants in Kessler employed a flawed plan to seize the suspect and continued to use deadly force when it was no longer objectively reasonable. Id. at 652, 931 P.2d at 646. The district court denied the defendants’ motion to strike the expert’s affidavit but nevertheless granted them summary judgment dismissing the complaint. Id. This Court held that Kessler’s expert “is qualified by knowledge and experience to assist the trier of fact with specialized knowledge on this subject.” Id. We further concluded “that the material the expert reviewed and his qualifications as a law enforcement expert provide a sufficient foundation for his expert opinion on police procedures, including the assessment of dangers.” Id. The Court did strike certain portions of the affidavit relating to the reactions that a Vietnam combat veteran might have in an arrest situation because the expert did not state his qualifications to opine as to the possible reactions of a Vietnam combat veteran. Id. Nevertheless, based upon the opinions of the expert regarding excessive use of force, which were supported by his law enforcement credentials, the Court vacated the summary judgment dismissing the Section 1983 claims and remanded the case for further proceedings. Id. at 657, 931 P.2d at 651.
In this case, the district court had no basis for discounting or quibbling with Montgomery’s opinions. Montgomery provided adequate foundation and performed a thoughtful analysis that should have been taken into account by the district court in determining whether summary judgment was appropriate on the excessive force claim.